IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL SPIRO and : | |
| DEBORAH SPIRO : | |
| : | CIVIL ACTION |
| Plaintiffs, : | |
| : | |
| v. : | |
| : | NO. 13-1561 |
| ALLIED BUILDING PRODUCTS CORP., : | |
| PLY GEM HOLDINGS, INC., : | |
| PLY GEM INDUSTRIES, INC., and : | |
| MW MANUFACTURERS, INC. : | |
| : | |
| Defendants. : | |

## <u>MEMORANDUM</u>

BUCKWALTER, S. J.                                                                                                            September 17, 2013

      Pending before the Court are Defendants Ply Gem Holdings, Inc. and Ply Gem Industries, Inc.'s Motion to Dismiss First Amended Complaint and Motion to Dismiss Cross-Claim. For the following reasons, the Motion to Dismiss First Amended Complaint and Motion to Dismiss Cross-Claim are denied in their entirety.

## I.    FACTUAL BACKGROUND

      According to the facts set forth in the First Amended Complaint, Plaintiffs are a married couple residing in Pennsylvania. (First Am. Compl.¶ 1.) Defendant Allied Building Products Corp. ("Allied") is New Jersey corporation with its principal place of business in New Jersey. (<u>Id.</u> ¶ 2.) Defendants Ply Gem Holdings, Inc. ("Ply Gem Holdings"), Ply Gem Industries, Inc. ("Ply Gem Industries"), and MW Manufacturers, Inc. ("MW") are Delaware corporations with

their principal places of business in North Carolina.[1]  (Id. at ¶¶ 3-5).

Sometime around March or April 2011, Plaintiffs met with Bill Lutz ("Lutz") and Philip Orapello ("Orapello"), representatives of Defendant Allied Building Products Corp., and Mike Ceceri, a representative of Defendants Ply Gem Holdings, Inc., Ply Gem Industries, Inc., and MW Manufacturers, Inc. (Id. ¶ 19.) Plaintiffs, Lutz, Orapello, and Ceceri discussed a possible sale of Ply Gem windows to Plaintiffs for installation in the new home they were building for themselves. (Id. ¶¶ 17, 21–24.) Lutz, Orapello, and Ceceri told Spiro that Defendants sold a two-and-a-half-inch-wide brickmould that would surround each window to be installed. (Id. ¶ 21.) Plaintiffs explained that the two-and-a-half-inch-wide brickmould was critical in order to simplify the installation process, reducing labor costs. (Id. ¶ 22.) Plaintiffs also asked Lutz, Orapello, and Ceceri whether installing arched windows in the house would be a problem. (Id. at ¶ 23.) Lutz, Orapello, and Ceceri told Plaintiffs that arched windows would not be a problem, with Ceceri providing a sample. (Id. ¶ 24.) Over the next several months, Defendants would meet with Plaintiffs at several restaurants located in and around Philadelphia to discuss the Plaintiffs' future home. (Id. ¶ 28.)

On January 5, 2012, Plaintiffs placed a order with Defendants for eight windows and other products, with a price totaling $31,000. (Id. ¶¶ 31, 46.) The windows and other products were delivered to Plaintiffs in March or April of 2012. (Id. ¶ 34.) At that time, Plaintiffs discovered that the brickmould was only one inch wide. (Id. ¶ 36.) Plaintiffs also discovered that the French door that they had ordered did not match the size that they had specified in the

---

[1]Defendants Ply Gem Holdings and Ply Gem Industries represent that MW Manufacturing has its principal place of business in Virginia. (Defs.' Mot. to Dismiss First. Am. Compl. at 10.)

2

blueprints that they had given to Defendants.  (Id. ¶ 40.)

When Plaintiffs notified Defendant Allied and Ceceri of the problems with their order, Ceceri told Plaintiffs that the two-and-a-half-inch-wide brickmould would cost an additional $4,000 to $5,000.  (Id. ¶ 38.)  Ceceri also told Plaintiffs that arched windows were not possible with the products that Plaintiffs had ordered.  (Id. ¶ 39.)  Ceceri asked Plaintiffs not to complain to Defendants because he would likely lose his job.  (Id. ¶ 41.)  Plaintiffs spoke with representatives for Defendants who told them that Defendants would not provide windows that matched Plaintiffs' specifications and would only provide replacement products at a cost to Plaintiffs.  (Id. ¶ 42.)  Rather than purchase new windows and products and delay construction, Plaintiffs elected to proceed with construction and install the windows and products Defendants had delivered.  (Id. ¶ 44–45.)  After installing the windows delivered by Defendants, Plaintiffs discovered rain flooding through six of the eight windows.  (Id. ¶ 48.)  As a result of having installed the windows and other products that Defendants sold, Plaintiffs allege damages.

On March 26, 2012, Plaintiffs initiated the present litigation.  Following some initial motion practice, Plaintiffs filed a First Amended Complaint on May 20, 2013, setting forth five causes of action.  Count I claims violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law.  (Id. ¶ 50–55.)  Count II alleges common law fraud.  (Id. ¶ 56–62.)  Count III alleges breach of contract.  (Id. ¶ 63–67.)  Count IV alleges negligence.  (Id. ¶ 68–72.)  Count V claims Defendants are liable under a theory of strict products liability.  (Id. ¶ 73– 79.)

On July 8, 2013, Defendant Allied filed cross-claims against Defendants Ply Gem Holdings, Ply Gem Industries, and MW, claiming that if Plaintiffs' allegations are proven true, Defendants Ply Gem Holdings, Ply Gem Industries, and MW are solely liable for the damages to

Plaintiffs. (Cross-cl. ¶ 2.)

On July 9, 2013, Defendants Ply Gem Holdings and Ply Gem Industries filed the pending Motion to Dismiss First Amended Complaint. On July 15, 2013, Ply Gem Holdings and Ply Gem Industries filed the pending Motion to Dismiss Cross-Claim. Defendants filed both motions pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. On July 23, 2013, Plaintiffs filed their Response in Opposition to the Motion to Dismiss First Amended Complaint.

## II. STANDARD OF REVIEW

Motions to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) require the court to accept as true the allegations of the pleadings and all reasonable inferences therefrom, and to resolve all factual disputes in favor of the plaintiff. Fed. R. Civ. P. 12(b)(2); see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). The Rule, however, "does not limit the scope of the court's review to the face of the pleadings"; rather the court must consider any affidavits submitted by the parties. Scott v. Lackey, No. Civ.A.02-1586, 2005 WL 2035598, at *1 (M.D. Pa. Aug. 11, 2005).

Although a defendant has the initial burden of raising the defense of lack of personal jurisdiction, once such a defense is raised, the burden shifts to the plaintiff to demonstrate facts that suffice to support an exercise of personal jurisdiction. Provident Nat. Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987); Cumberland Truck Equip. Co. v. Detroit Diesel Corp., 401 F. Supp. 2d 415, 418 (E.D. Pa. 2005). Plaintiff may do so through affidavits or competent evidence that show sufficient contacts with the forum state. De Lage Landen Fin. Servs., Inc. v. Rasa Floors, LP, No. Civ.A.08-0533, 2008 WL 4822033, at *3 (E.D. Pa. Nov. 4,

2008). Such contacts must be established with "reasonable particularity," to present a prima facie case. Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) (quoting Provident, 819 F.2d at 437). If the plaintiff meets this burden, the defendant must then establish the presence of other considerations that would render personal jurisdiction unreasonable. De Lage, 2008 WL 4822033, at *3 (citing Carteret Sav. Bank v. Shushan, 954 F.2d 141, 150 (3d Cir. 1992)).

### III. DISCUSSION

Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a non-resident defendant to the extent provided by the law of the state in which the federal court sits. Fed. R. Civ. P. 4(k)(1)(A); see also Martin v. Citizens Fin. Grp., Inc. No. Civ.A.10-260, 2010 WL 3239187, at *3 (E.D. Pa. Aug. 13, 2010). Pennsylvania law, which governs the present case, necessitates the application of Pennsylvania's long-arm statute, 42 Pa. C.S. § 5322. Under this statute, personal jurisdiction of Pennsylvania courts over nonresident defendants is permitted "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b); see Mellon Bank, 960 F.2d at 1221 ("The Pennsylvania statute permits the courts of that state to exercise personal jurisdiction over nonresident defendants to the constitutional limits of the due process clause of the fourteenth amendment."). Therefore, a court need only inquire whether the exercise of personal jurisdiction over the defendant would be constitutional under the Due Process Clause. Mellon Bank, 960 F.2d at 1221. Pursuant to such constitutional considerations, physical presence within the forum is not required to establish personal jurisdiction over a nonresident defendant. IMO

Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998). Instead, personal jurisdiction may be based on either a defendant's general contacts or his specific contacts with the forum. Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001).

"General jurisdiction depends on a defendant having maintained 'continuous and systematic contacts' with the forum state." D'Jamoos ex rel. Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 107 (3d Cir. 2009) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984)). Proof required to assert this "general" jurisdiction must be "extensive and persuasive." See Reliance Steel Prods. Co. v. Watson, Ess, Marshall, & Engass, 675 F.2d 587, 589 (3d Cir. 1982) (quotations omitted). The defendant's contacts need not be related to the cause of action being litigated. McMullen v. Eur. Adoption Consultants, Inc., 109 F. Supp. 2d 417, 418 (W.D. Pa. 2000). If the foreign defendant "maintains 'continuous and systematic' contacts with a state, the state has general personal jurisdiction over the party, and the non-resident may be sued in that state on any claim." Wilmington Fin., Inc. v. Moonis, No. Civ.A.08-2365, 2008 WL 4661033, at *3 (E.D. Pa. Oct. 21, 2008) (quotations omitted).

In the absence of "continuous and systematic" contacts, a plaintiff may rely on "specific jurisdiction" where the cause of action is related to or arises out of the defendant's contacts with the forum. IMO Indus., 155 F.3d at 259 (citing Helicopteros, 466 U.S. at 414 n.8). Proper establishment of specific jurisdiction under the Due Process Clause requires satisfaction of a three-part test. Louis A. Grant, Inc. v. Hurricane Equip., Inc., No. Civ.A.07-438, 2008 WL 892152, at *3 (W.D. Pa. Apr. 2, 2008). First, the plaintiff needs to show that the defendant has "constitutionally sufficient 'minimum contacts' with the forum." IMO Indus., 155 F.3d at 259 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)). Second, the plaintiff's

6

claim must "arise out of or relate to those activities." Helicopteros, 466 U.S. at 414.  Third, the reviewing court should consider additional factors to ensure that the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)); see also O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007) (enumerating the three elements of specific jurisdiction).

In the present case, Plaintiffs do not assert that the Court has general jurisdiction over the Defendants. Rather, Plaintiffs claim specific jurisdiction should be asserted over Defendants Ply Gem Holdings and Ply Gem Industries (collectively "Defendants") because they had minimum contacts with Pennsylvania, that the present dispute arises from Defendants' contacts, and that this Court's exercise of jurisdiction over Defendants will not violate traditional notions of fair play and substantial justice. Defendants, in turn, respond that they do not have any contacts with Pennsylvania.  In an effort to resolve this dispute, the Court now turns to an analysis of the three steps enumerated by the Supreme Court.

### A. **Whether Defendants Have Sufficient Minimum Contacts with Pennsylvania to Warrant the Exercise of Personal Jurisdiction**

To satisfy the first two components of the specific jurisdiction test, the acts identified by plaintiff must be "such that [the defendant] should reasonably anticipate being haled into court [in the forum state]." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).  It has long been recognized that minimum contacts necessary to support specific jurisdiction exist only where the defendant "has purposefully directed its activities toward the residents of the forum state . . . or otherwise 'purposefully avail[ed] itself of the privilege of conducting activities

within the forum State, thus invoking the benefits and protections of its laws.'" IMO Indus., 155 F.3d at 259 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958) (other internal quotations omitted)). "This test is intended to protect a non-resident defendant from jurisdiction based on contacts that are 'random, fortuitous,' or 'attenuated,' or that result from the unilateral activity of another party or a third person." Pullman Fin. Corp. v. Hotaling, No. Civ.A.07-1703, 2008 WL 2563372, at *4 (W.D. Pa. June 24, 2008) (quoting Burger King, 471 U.S. at 475). As noted by the United States Court of Appeals for the Third Circuit, "in the course of this necessarily fact-sensitive inquiry, the analysis should hew closely to the reciprocity principle upon which specific jurisdiction rests . . . . With each purposeful contact by an out-of-state resident, the forum state's laws will extend certain benefits and impose certain obligations . . . . specific jurisdiction is the cost of enjoying the benefits." O'Connor, 496 F.3d at 323 (internal citations omitted).

For a plaintiff to prevail on a motion to dismiss for lack of personal jurisdiction, relying on a theory of agency, it "need only make a prima facie showing of the connection between the actions of the agent and the principal." D'Jamoos ex rel. Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 108 (3d Cir. 2009) (quoting In re: Goettman, 176 P.3d 60, 68 (Colo. 2007)). When an agent's activities are of such a character as to amount to doing business of the principal, the principal is subject to personal jurisdiction of the state in which the activities occurred. Id.

Here, taking as true the facts set forth in Plaintiffs' First Amended Complaint and the exhibits attached to Plaintiffs' Response in Opposition to the Motion to Dismiss, Plaintiffs have made a prima facie showing that Defendants Ply Gem Holdings and Ply Gem Industries did purposefully direct their activities toward the residents of Pennsylvania. Defendants approached Plaintiffs in Pennsylvania about the possibility of purchasing windows for a specific home to be

built in Pennsylvania. (First Am. Compl. ¶ 19–24.) Defendants extolled the benefits of their products to Plaintiffs and answered Plaintiffs' questions about their products in person, in Pennsylvania. (Id. ¶¶ 21–24.) Defendants provided Plaintiffs with a product sample in Pennsylvania. (Id. ¶ 24.) Over several months, Defendants met with Plaintiffs on numerous occasions to discuss the potential purchase of Defendants' products at restaurants located in Pennsylvania. (Id. ¶ 28.) Finally, on January 5, 2012, Plaintiffs placed an order with Defendants for the purchase of windows and other products that Defendants knew would be installed in Plaintiffs' new home in Pennsylvania. (Id. ¶ 31.)

Defendants made contacts with Pennsylvania through the actions of Mike Ceceri. (Id. ¶¶ 19–24, 37–41.) Plaintiffs assert that Ceceri was acting as Defendants' agent. While Plaintiffs have not made a direct showing that satisfies all of the elements of Pennsylvania's test for a principal-agent relationship[2], a plaintiff need not make direct showing of a principal-agent relationship in order to assert personal jurisdiction over a purported principal. Instead, to overcome a motion to dismiss for lack of personal jurisdiction under an agency theory, a plaintiff must only "make a prima facie showing of the connection between the actions of the agent and the principal." D'Jamoos at 108 (3d Cir. 2009) (quoting In re Goettman, 176 P.3d 60, 68 (Colo. 2007)).

Here, Plaintiffs have made a showing of a connection between the actions of Mike Ceceri and Defendants Ply Gem Holdings and Ply Gem Industries. Taking as true the facts that Plaintiffs

---

[2]"The basic elements of agency are the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." Lapio v. Robbins, 729 A.2d 1229. 1234 (Pa. Super. Ct. 1999) (quoting Bradney v. Sakelson, 473 A.2d 189, 191 (Pa. Super. 1984)) (internal citations omitted).

allege in their First Amended Complaint and exhibits attached to their Response in Opposition to the Motion to Dismiss, Ceceri identified himself as a representative of Ply Gem in numerous ways. Ceceri identified himself in e-mails and on his business card as "Sales Representative" for "Ply Gem Windows."[3] (Pls.' Resp. in Opp'n to the Mot. to Dismiss, Exs. B–C.) Ceceri's e-mails bore the "Ply Gem" logo. (Id.) Ceceri used the e-mail address "mceceri@plygemwindows.com." (Id.) When Ceceri met with Plaintiffs to discuss the sale of windows and other products, he identified the products as those of "Ply Gem." (First Am. Compl. ¶ 21.) In showing the ways in which Ceceri presented himself as a representative of "Ply Gem" and "Ply Gem Windows," Plaintiffs have made a prima facie showing of "the connection between the actions of" Ceceri and Defendants Ply Gem Holdings and Ply Gem Industries.

Defendants did more than simply put their products into the "stream of commerce"[4], and their contacts with Pennsylvania were not "'random, fortuitous,' or 'attenuated,' or . . . result[ing] from the unilateral activity of another party or a third person." Pullman, 2008 WL 25663372 at *4 (quoting Burger King, 471 U.S. at 475). Rather, Defendants deliberately solicited business from two specific residents of Pennsylvania for a house to be built in Pennsylvania such that Defendants "directed [their] activities toward the residents" of Pennsylvania. IMO, 155 F.3d at 259 (quoting Hanson, 357 U.S. at 253). These facts represent not only minimum contacts with Pennsylvania, but also directly relate to Plaintiffs' cause of action such that the present case arises out of or relates to Ply Gem Holdings and Ply Gem

---

[3] It is worth noting that Ceceri did not make any distinction between "Ply Gem," "Ply Gem Windows," Ply Gem Holdings, and Ply Gem Industries.

[4] See Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113 (1987).

Industries' activities in Pennsylvania.

Defendants Ply Gem Holdings and Ply Gem Industries argue in their Motion to Dismiss[5] that they had no contacts with Pennsylvania because any contacts made in Pennsylvania were those of Defendant MW Manufacturers, Inc., a sub-subsidiary of Defendant Ply Gem Industries. Defendants analogize the present case to two precedents in which minimum contacts of a corporate subsidiary were not imputed to the parent corporation. However, these cases are distinguishable from the present case.

In Arch v. American Tobacco Co., the court held that B.A.T. Industries P.L.C. should be dismissed from a class-action suit against its subsidiary Brown & Williamson Tobacco Company because it lacked sufficient minimum contacts with the forum state of Pennsylvania. 984 F. Supp. 830, 835-36 (E.D. Pa. 1997). Among the reasons the court named for finding a lack of personal jurisdiction were the fact that BAT "ha[d] never transacted any business in Pennsylvania," and that BAT "maintain[ed] no . . . agent, distributor, servant, broker, or other representative in Pennsylvania." Id.

Here, the Plaintiffs have made a showing that Defendants Ply Gem Holdings and Ply Gem Industries transacted business in Pennsylvania through its "agent, distributor, servant, broker, or other representative in Pennsylvania" Mike Ceceri. The fact that a subsidiary of Ply Gem Holdings and/or Ply Gem Industries may have actually manufactured the windows sold in Pennsylvania does not change the degree to which Ply Gem Holdings and Ply Gem Industries purposefully availed themselves of the of the privilege of conducting activities in Pennsylvania.

---

[5] Defendants make identical arguments in their Motion to Dismiss First Amended Complaint and Motion to Dismiss Cross-Claim. Accordingly, the Court refers to both motions, collectively, as the "Motion to Dismiss."

Defendants also analogize the present case to Action Mfg. Co. v. Simon Wrecking Co., in which holding company World Fuel Corp. was found not to have had personal jurisdiction in Pennsylvania, despite the actions in Pennsylvania of its subsidiary World Fuel, Inc. 375 F. Supp. 2d 411, 416–17 (E.D. Pa. 2005). However, analogizing World Fuel Corp. and World Fuel, Inc. in Action Mfg. to Ply Gem Holdings and Ply Gem Industries in the present case is inapt. In Action Mfg., the plaintiff did not argue and the court did not consider whether there was specific jurisdiction over World Fuel Corp. Id. at 419. Instead, the Action Mfg. plaintiff "only argue[d] for the exercise of general jurisdiction." Id. Here, Plaintiffs' only argument in favor of personal jurisdiction over Defendants Ply Gem Holdings and Ply Gem Industries in Pennsylvania alleges that the Court has specific jurisdiction. (See Pls.' Resp. Opp'n Mot. to Dismiss at 6.) Plaintiffs make no argument that there is general jurisdiction in Pennsylvania over Ply Gem Holdings or Ply Gem Industries.

In light of these considerations, the Court finds that Defendants Ply Gem Holdings and Ply Gem Industries had minimum contacts with Pennsylvania, and that Plaintiffs' cause of action arose out of or related to Defendants Ply Gem Holdings and Ply Gem Industries' activities in Pennsylvania. Therefore, Plaintiffs have satisfied the first two prongs of the three-prong test for specific jurisdiction.

### B.  Whether the Assertion of Personal Jurisdiction Comports with the "Traditional Notions of Fair Play and Substantial Justice"

The Court now turns to the third prong of the three-prong test for specific jurisdiction: whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985) (quoting Int'l

Shoe Co. v. Wash., 326 U.S. 310, 320 (1945)). The five factors that courts must consider when balancing jurisdictional reasonableness include: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate and international judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest for the several states in furthering fundamental substantive social policies. Burger King, 471 U.S. at 477 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)).

Here, Defendants have not contested the issue of whether the assertion of personal jurisdiction over them comports with traditional notions of fair play and substantial justice. Moreover, Defendants have not made a showing that an assertion of personal jurisdiction would impose any burden upon them. Further, Pennsylvania bears a significant interest in adjudicating the dispute and ensuring that its residents, particularly those doing business in the Commonwealth, are not harmed. Plaintiffs, both Pennsylvania residents, have chosen this forum as a means for them to obtain convenient and effective relief. Finally, there are no procedural interests or substantive social policies of other states that come into play in the present case. Accordingly, the Court finds that the exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice. Therefore, the Court holds that Plaintiffs have satisfied the third prong of the three-prong test for specific jurisdiction.

## IV. **CONCLUSION**

In sum, the Court finds that Plaintiffs have met their burden of demonstrating facts sufficient to support the exercise of personal jurisdiction. By contrast, Defendants have not set forth any viable considerations that would render jurisdiction unreasonable or unfair.

Accordingly, Defendants Ply Gem Holdings and Ply Gem Industries' Motion to Dismiss First Amended Complaint and Motion to Dismiss Cross-Claim are denied.